May it please the court. My name is Hugh Mullane, and I'm an attorney with the Department of Justice here on behalf of the appellant. This case involves a criminal alien who was ordered deported by an immigration judge. He appealed that decision, and while his appeal was pending, he departed the United States. The Board of Immigration Appeals concluded that under 8 CFR section 3.4, that his departure divested it of jurisdiction because his departure withdrew his appeal. The district court initially ordered the INS to allow Mr. Chow back into the United States. Ultimately, the district court concluded that it disagreed with the board, the Second Circuit, and the Fifth Circuit's interpretation of 8 CFR 3.4, and concluded that there must be a fluity exception for brief, casual, and innocent departures. The district court erred when it concluded that it had jurisdiction over the case, and it also erred when it declined to defer to the reasonable interpretation of the Board of Immigration Appeals in this case. Our argument is thus twofold. It is first that this court, like the district court, lacked jurisdiction pursuant to 106C, and even if it had jurisdiction, that the board's interpretation was reasonable, and so the district court should have deferred to it. 106C of which statute? Oh, I'm sorry, of 8 U.S.C. of the Immigration and Nationality Act, the 8 U.S.C. section 1105A.C. Could you give us an idea of the universe of cases that this would affect? This is pre-IRIRA, correct? That's right. Now, the so 8 U.S.C. 1105A.C. or 106C doesn't have any sort of, it doesn't apply to current cases in the sense that someone who was put in proceedings today, who got an order and who left the country in sort of these factual circumstances, 106C wouldn't apply. The review provisions now are under 8 U.S.C. section 1252. My question is, do you have any idea of the numbers? You've answered part of the question. You've told us that the world of people affected by the new statute, IRIRA, this case, however we would rule, would have no impact. Is that right? Well, I guess in respect to the statute it wouldn't, but the regulation has not changed from sort of pre-IRIRA to IRIRA. So I guess if you ruled strictly on 106C, it would not have any probably, you know, the impact would be less because of the fact that 106C has only sort of a limited lifespan. There are obviously cases, this including one, that still 106C applies to, but I suspect the universe is a little bit, is somewhat smaller. But I wouldn't, I'm sorry, I wouldn't even sort of hazard to guess sort of the numbers. I mean, there are, you know, literally thousands and thousands of sort of, if you will, old cases that are still in the pipeline. So, I mean, there is a potentially large universe, but it's not as infinite as sort of the new statute would be. It's okay to say you don't know. Sorry, Your Honor. Okay. But my second point is, and sort of the merits point is here, too, is that 8 CFR 3.4 continues. And the three, the two circuit courts that have interpreted this statute have clearly said that if you depart while you have an order that's on appeal pending, that that departure is the end of the case. How old a regulation is 8 CFR 3.4? Was it in existence at the time of Flutie? You know, Your Honor, that's a good question. I don't know the answer to that. It may have been. If it was, it wasn't mentioned in Flutie, if I remember. That is correct, Your Honor. It wasn't mentioned in Flutie. And so I'm not sure what the sort of what the relationship between the Flutie, in that sense, and sort of the temporal scope of it would be. I guess on that point, though, in a sense that the other case that we cited, the other Supreme Court case, the Pinfapia, for lack of a better pronunciation, also interpreted a statute, the suspension of deportation statute, and said that the Flutie exception doesn't apply there either. So just because the court in Flutie didn't sort of talk about, you know, sort of the other possible ramifications, I'm not so sure that would help the atollee here, Mr. Chau. It seems to me that after Pinfapia and the Second Circuit's interpretation in Mija Ruiz, the Fifth Circuit's interpretation in Aleman-Fiaro, it seems to me that all of the courts that have considered this, with the exception of this district court, have really limited Flutie to sort of the circumstances of Flutie, which was a person who, if he hadn't even sort of walked over the border, would have been able to stay here without any question. Now, the Mr. Chau in this case, he clearly was in deportation proceedings. I mean, the purpose of those proceedings was to make him leave the country. So I think those cases are, the Flutie case is clearly distinguishable on that fact alone. And that's really what the courts have all said. And really the question is, is the board's interpretation, maybe it's not the one that if you were deciding this on a clean slate, maybe it's not the interpretation you would come up with, but the question is, is it a reasonable one? And it seems to me, in light of those cases, in light of the board's sort of discretion here, in light of what the Supreme Court has said about the deference to the immigration decisions to begin with, that that conclusion was a reasonable one. What's the operative word in Flutie was entry? Yes, Your Honor. And the operative word here is departure. That's correct, Your Honor. What's the difference? Well, I think the reason, the difference between the two, I guess they are related concepts. But the Fifth Circuit in Alamont-Fiaro thought that the difference was that the departure is going to be always relating to a deportation proceeding. And so, I mean the Supreme Court in Flutie could have said it doesn't make any difference if it was temporary, casual, or whatever. You step across the line, you're done. But they didn't. So, both of them involve exiting the country. That's clearly correct. I mean, they are really complements in a sense. But I think what the Supreme Court said in Flutie was, is that the exit, and then sort of the entry issue, related to someone who didn't have any sort of immigration problems, if you will. Do you think that has anything to do with their use of the word innocent? I've always wondered what's an innocent departure. I may not have gotten the instruction on that, and you can help me. Well, the court, I mean the board in this case didn't really reach the issue of whether or not it was innocent or not. Would they determine, what would they consider to decide whether, what's innocent about a departure? It's not criminal. Well, it seems to me that clearly, were there any sort of nefarious intent in the departure, that it would not have been covered by Flutie. The exact bounds of that, though, haven't really been sort of fashioned out precisely, other than to say that sort of obviously, if you're going out to smuggle somebody back in, that is not going to be an innocent departure in any sense of the way, even if you're not prosecuted for it. We had the language saying that if you leave while the appeal's pending, it's over. And it is contended that Flutie now makes all that something yet to be worked out, to be fleshed out, whether or not you've left under the circumstances that would make that law inoperative. That's right, Your Honor. I mean, in this court, in another sort of in a related context, in Blaze, basically said that, you know, if you depart, that person had an appeal pending, too, and had departed, and said that their departure, you know, made that order final. And so then there was sort of a criminal sentencing component to that case. Suppose they had dismissed his case or found it had been abandoned before he came back. Could he come back and make it innocent and brief in order to reverse that? Well, in part, sir, I guess that was the problem here, Your Honor, is that the court ordered, the district court ordered the INS to let him back in. And so the board would have issued its order no matter what, in a sense, I think, whether he had come back or not. And it seems to me that he can't sort of come back after the board has issued its order and then somehow make it innocent. I think they would come to the exact same result. Well, that's your argument. But the court held otherwise, didn't it? That's right. The district court held otherwise, yes. All right. Thank you. May it please the Court. I'm Robert Job, and I'm appearing today on behalf of the petitioner, Appellee Mr. Henry Chow. The issue in this case is whether the Constitution and the Immigration and Nationality Act allow the board to impute to a lawful permanent resident alien an intent to withdraw a meritorious appeal simply because he took a five-day vacation trip to Canada with his United States citizen spouse. And the law said doing that withdraws it. Pardon me, Your Honor? Just because he took the trip, and the law said if you take the trip, you withdraw your appeal. Well, that's the question we have to determine today. It doesn't say that. You say it doesn't say that. No, I don't believe it does. Both this court and the Board of Immigration Appeals have long recognized that to waive his right of appeal, an alien in deportation proceedings must do so knowingly and intelligently. That principle, however, is fundamentally at odds with the Board's conclusion in this case that Mr. Chow somehow withdrew his appeal by departing this country on a five-day vacation trip to Canada because it's undisputed that Mr. Chow would not have taken the trip had he known that the result would be the automatic withdrawal of his appeal. He had been told that, though, in the appeal form, had he not? No, Your Honor. He never saw the appeal form. But he had a lawyer, and the lawyer had it, and we charge people every day with the knowledge of their lawyers. Again, Your Honor, let me make a couple points about that. First, the issue is, well, what should his lawyer have told him? And, again, that's unclear. If he'd been in the Second Circuit or the Fifth Circuit, sure, his lawyer would have told him, you can't leave. If you do, your appeal is going to be deemed abandoned. But we're in the Ninth Circuit, and this is an open question in the Ninth Circuit. So the lawyer didn't tell him anything. His lawyer told him, I believe, that it would not be wise to depart. But she didn't tell him. Does he have good errors and omissions insurance? Pardon me, Your Honor? Does that lawyer have good errors and omissions coverage? I don't know, Your Honor. You'll have to ask her that question. Wouldn't that be important for us to know, to see if we are qualified to sit on this case, if we have stock in that company? What do you think? I don't know the answer to that, Your Honor. I'm serious about it. No, I can't answer that question because I have no idea who her insurer is. But my point is this. I don't think she committed any sort of malpractice in not explicitly telling him that his appeal would be abandoned. Because, again, this was an open question in the circuit. You're in serious grave danger of having your appeal thrown out if you leave. Yes. And she didn't do that. That's correct. If she did do that, your case is over. I think our constitutional claim would be much more difficult. It wouldn't affect our statutory argument whatsoever. The Flutie claim would go forward irrespective of that. It does seem like if, as here, the INS specifically puts out a form saying, if you leave the United States after an immigration judge's decision in deportation proceedings, but before you appeal the decision to the board, you have waived your right to appeal. And here the alien leaves. The lawyer has this in her file. Is that an innocent departure when we charge the alien with knowing that? Your Honor, the INS has never argued that this departure was other than brief, casual, or innocent. The issue here with regard to the statutory claim is simply whether the Flutie doctrine applies. If it applies, the government has virtually conceded the point that this departure, a vacation trip, was innocent. The fact that it occurred during the pendency of deportation proceedings does not make it other than innocent. Your Honor, Judge Hill was asking earlier, what does innocent mean? Innocent means you have an innocent purpose in making the trip. Well, what's the guilty purpose? For example, if you're going to go to Canada to smuggle drugs into the United States or smuggle aliens into the United States, that's a guilty purpose. You wouldn't need this regulation to convict someone of a crime for doing that, would you? Well, of course not. But this is a separate issue, not whether or not you can be convicted of a crime, but whether or not your departure is other than innocent, which means that your appeal would be withdrawn. How long is brief? Well, in this circuit, this court has held departures in excess of three months to be brief. Brief, that's right. So really, whatever this INS tries to say by its regulation, you want us to hold that you can leave and go out as much as three months while your appeal is pending, and when you come back in, they can't pull this regulation away. Is that about right? No. It's a case-by-case determination that has to be made. The departure has to be brief, gradual, and innocent. That's how all immigration law has been interpreted, isn't it, on a case-by-case basis. And? Isn't that about right? My point would be that the statutory claim only applies to permanent residents. The regulation makes some sense when it's applied to somebody who entered the United States illegally. Why does that not make any sense on an LPR? Because a lawful permanent resident like Mr. Cha who has been here for some 22 years, he's been able to travel for 22 years under the regulations, 1.1P of the regulations. His status as a permanent resident continues until the board enters a final order of deportation against him. How do you compare your client's position to the client in Phinpathia? Completely different situation. Phinpathia. As I understand it was someone seeking LPR status. That's exactly right. And to establish seven years continuous residence. Correct. Not residence terms. And there was a brief departure from the country which the service argued interrupted the seven years required continuous residence. Yes. It wasn't continuous residence but continuous physical presence. And it was an individual who had never had lawful permanent resident status but was applying for that benefit. And the court held that the statute requires continuous physical presence. There are no exceptions. There was no fluity issue presented there, and it's just ridiculous for the government to rely on that case. It's an altogether different situation. I asked your opponent about the history of HCFR 3.4, a question perhaps I should have known the answer to, and he didn't know. Do you know if that regulation was in existence at the time of fluity? I don't believe so, Your Honor. I believe fluity was decided in 1963, and I believe this regulation came into effect the following year, 1964. Going back to the fate of this poor lawyer, Charles says that his attorney advised him against traveling outside the United States, didn't he? That's right. Maybe she's gotten out on any claim of malpractice. But again, it's irrelevant. But doesn't that ruin your case? No. It affects the constitutional claim. Again, Your Honor, it's wholly irrelevant to the statutory claim. The issue on the statutory claim has nothing to do with counsel. The issue on the statutory claim is whether the board's construction of this regulation can be reconciled with the statute and the Supreme Court precedent interpreting that statute, which basically holds that lawful permanent residents who make brief, casual, and innocent departures, their status should not be affected by that brief, casual, and innocent departure. The attorney's failure to advise or whether she did advise or not is irrelevant to that question. It does affect the constitutional question. I agree with that. But the fact remains on the constitutional question even, this individual was never informed by his lawyer, by the court, never saw this notice of appeal form. He didn't know that his departure would result in the withdrawal of his appeal. But she just told us that the lawyer told him that. She didn't tell him that his appeal would be ---- She just advised him not to leave the country. That's exactly right. And he said, wait a minute, nobody told me what would happen if I did so with her advice. She said it would be unwise to leave. She didn't say your appeal would be abandoned. And it would be perhaps malpractice for her to say so because, again, that's an open question in this circuit. And as the district court ruled in this particular case, the Flutie doctrine applies, and it's arguably the case that his departure does not withdraw his appeal. And that would be your statutory case? Yes. That's the statutory argument. I want to briefly discuss the two key cases here, the Aleman-Fiero case and the Mejia-Ruiz case, because these are the only two circuit decisions dealing with the Flutie argument. I think it's important that we review these cases closely because the Mejia-Ruiz case contains no analysis whatsoever. In holding that ACFR 3.4 applies to lawful permanent residents, the Second Circuit simply cited to the Aleman-Fiero case, the Fifth Circuit case. They get right to the point there, don't they? I guess they do. They don't write these law review articles. They just hold what the law says is what it says. But the Fifth Circuit case was wrongly decided. And it's obvious that it was wrongly decided because the Flutie doctrine applies to any brief casual and innocent departure from the United States except where the departure was, quote, occasioned by deportation proceedings. The Fifth Circuit held that any departure during the pendency of a deportation proceeding was occasioned by deportation proceedings. That's simply untenable. It's unpersuasive, as the district court held. Mr. Chao's departure was not occasioned by deportation proceedings. It was occasioned by a desire to take a five-day trip to Canada. And it's simply misreading the statute to suggest that any departure during the pendency of deportation proceedings was caused by or due to, occasioned by, deportation proceedings. The Fifth Circuit ruling is simply incorrect, as the district court pointed out. Now, the government relies on a couple other decisions in this case. But before I get to those, I want to address the issue because I'm running out of time here, the issue of deference. I agree that ordinarily it's appropriate to defer to a reasonable interpretation of a statute. But in this particular case, no. Deference is not appropriate for three reasons. First, the critical question in this case is how we interpret the Supreme Court decision in Rosenberg v. Flutie. And there's nothing in Chevron or any other Supreme Court case to suggest that the courts need to defer to administrative agencies in terms of interpreting Supreme Court precedent, which is the critical issue in this case. But moreover, when the board rendered its decision in this case, it never asked whether the regulation was compatible with the statutory scheme, and it ignored the fact that its interpretation of the regulation and its application of that regulation in this particular case raises serious constitutional concerns. For those reasons, deference would be inappropriate. All right. Thank you. You've used your time. We'll give you a minute, Riva. I just have one real point to make. If you look at, and I don't know if you have it in front of you, page 48 of this, the record that we compiled, Mr. Chau's signature appears on the notice of appeal form. So I just don't think it's tenable to argue that he didn't see the notice of appeal form. That's my only point. The other points are in our brief. The case just argued will be submitted.
judges: Hill, Tg Nelson, Hawkins